UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN HAUGHTON,

                              Plaintiff,

                                                                                       DECISION AND ORDER

                                                                                        13-CV-6010L

                             v.

COGNISIGHT, LLC,
GREATER ROCHESTER INDEPENDENT
PRACTICE ASSOCIATION,

                              Defendants.
_____

      This case arises out of an arrangement–whether it was a "contract" or not is one of the principal issues in this case–between plaintiff John Haughton and defendants, Greater Rochester Independent Practice Association ("GRIPA"), and Cognisight, LLC. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**BACKGROUND**

      The facts alleged in the complaint, which for the purposes of deciding defendants' motion are accepted as true, are as follows. GRIPA is a for-profit joint venture of hospitals and physicians, with a principal place of business in Monroe County, New York. Cognisight is a wholly-owned subsidiary of GRIPA.

      Plaintiff, a physician residing in Maryland, is a "nationally recognized health care quality and technology expert ... ." Complaint ¶ 7. In 2006, GRIPA asked Dr. Haughton to assist it in

developing certain services that GRIPA wanted to offer to third parties, relating to reimbursement for Medicare-covered services. Dr. Haughton agreed, and began providing such services to GRIPA.

Apparently the parties never entered into a formal, written contract governing plaintiff's services or what he was to receive in return. That was a decision they probably now regret. In March 2007, however, GRIPA's president, Greg Coughlin, did outline some of those matters in a written business plan ("Business Plan") for a new company, Cognisight, which was intended "to provide Medicare Advantage Plans (MAPs) with the opportunity to receive the most appropriate reimbursement from Medicare for each of its MA members." Dkt. #17-1 at 3. In that plan, which Coughlin presented to GRIPA's board of directors, Coughlin stated in part that GRIPA was "collaborating with John Haughton M.D., a nationally recognized health care quality and technology expert," whose expertise would assist GRIPA and Cognisight in connection with Cognisight's provision of Medicare-related services to its customers. Dkt. #11-1 at 2.[1] The plan also referred to Haughton as a "partner," Dkt. #17-1 at 5, and to Cognisight's "partnership" with him. *Id.* at 2, 4.

In the Business Plan, under the heading "Financial Plan," Coughlin outlined Cognisight's projected revenues and expenses over the next three years. He also stated, "With the assumption of profit sharing of 23% (15% to employees and eight percent to John Haughton), payouts will range between $1.5 million and $10.3 million ... ." Dkt. #11-1 at 4. Notably, under "Forecast Assumptions," Coughlin said that "John Haughton receives eight percent of profits after all other expenses." Dkt. #11-1 at 6.

The parties' relationship proceeded smoothly, at first. Dr. Haughton did provide various services to Cognisight, for which he received payments of $250,000 in 2007, $153,000 in 2008, and $478,000 in 2009. Complaint ¶¶ 19-22. Plaintiff alleges that he was informed by Cognisight that

---

[1]On a motion to dismiss, the court may consider documents that are referred to in, and integral to, the complaint. *Playwell Toy, Inc. v. Bureau Veritas Consumer Products Services, Inc.*, No. 09-CV-0704, 2007 WL 2892031, at *9 (W.D.N.Y. Sept. 28, 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

the 2008 and 2009 payments represented 8% of Cognisight's net profits for those calendar years. Complaint ¶¶ 21, 23.

In late 2010, the first signs of trouble appeared. Cognisight's president and executive vice president were terminated, and additional employee terminations followed. Complaint ¶ 26. Dr. Haughton continued to provide services to Cognisight, however, and in early 2011, Cognisight's new management team told him that his 2010 compensation would be calculated following the completion of an internal audit. Complaint ¶ 30.

As months passed and no payment was forthcoming, Haughton became increasingly concerned, particularly since Cognisight's overall fortunes had taken a downturn. In response to Haughton's inquiries, Cognisight's new president, Joseph Vasile, sent Haughton a letter, dated September 22, 2011,[2] which stated in part, "[W]e want to understand our current relationship with you and the likelihood for an on-going relationship." Stating that Cognisight "recognize[d] that [Haughton] ... ha[d] made the following contributions to the company in the past few years," Vasile went on to list a number of services that Haughton had provided to Cognisight, such as helping to develop and refine Cognisight's business model and software, meeting with clients, and other related services.

After reciting the payments that Cognisight had made to Haughton in the three preceding years, Vasile then stated, under the heading, "Evaluation of Association During 2010," that in 2000, Haughton had attended meetings and a conference, participated in phone discussions with Cognisight staff, and had been listed as "Consulting Medical Director" on some client contracts. "Accordingly," Vasile wrote, "we would like to pay a fee of $25,000 for your work in the year 2010." He did not explain how he or anyone else had arrived at that figure. Vasile also stated that Cognisight wanted

---

[2]Since this letter effectively marked the end of Haughton's and defendants' relationship, it began, appropriately enough, with the salutation, "Dear John." *See* http://www.worldwidewords.org/qa/qa-dea5.htm (explaining how the term "Dear John letter" came to refer to "a letter from a woman to a boyfriend or husband saying that all is over between them ... ."

- 3 -

Haughton to continue to "provide services in an expert role," with his compensation to be based on client growth and revenue. Vasile expressed his hope that the parties could "achieve a mutually beneficial arrangement ... ."

Apparently Haughton did not accept the $25,000 payment that was offered him, nor did the parties' relationship continue. There is no indication that either side formally terminated their relationship, but it appears that Haughton did not provide any services for Cognisight after he received Vasile's "Dear John" letter.

Plaintiff then brought this action in New York State Supreme Court in December 2012. Defendants removed the action to this Court in January 2013, based on this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

The complaint asserts nine causes of action: (1) for breach of contract, based on defendants' failure to pay plaintiff 8% of Cognisight's net profits for 2010; (2) for breach of contract, based on defendants' failure to pay plaintiff 8% of Cognisight's net profits for 2011, or at least a pro rata portion of those profits; (3) for breach of contract, based on defendants' failure to pay plaintiff 8% of Cognisight's net profits of Cognisight that accrued after the termination of plaintiff's relationship with defendants, but related to services provided before that termination; (4) for breach of fiduciary duty; (5) for unjust enrichment; (6) for an accounting of the profits that Cognisight earned with respect to 2007, 2008, and 2009; (7) for damages based on theories of promissory estoppel and detrimental reliance; (8) for 8% of the value of Cognisight's business as of the date of the termination of plaintiff's relationship with Cognisight; and (9) as an alternative to the eighth cause of action, for a declaration by the Court that plaintiff is entitled to 8% of the value of Cognisight upon its sale.

# DISCUSSION

## I. General Principles

In deciding a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must accept all well-pleaded, factual allegations in the complaint as true and draw all inferences in favor of the plaintiff. *GE Investors v. General Elec. Co.*, 447 Fed.Appx. 229, 230 (2d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the pleadings must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (stating that a claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' ... [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955).

Nevertheless, it is clear from *Twombly* itself that the Supreme Court has not "imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence ... ." As noted in *Twombly*, Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." 550 U.S. at 555 (other internal quotation marks omitted).

What is necessary, then, is not "detailed factual allegations," but more than "labels and conclusions ... ." The ultimate question is whether the complaint's factual allegations are "enough to raise a right to relief above the speculative level," *i.e.*, enough to make the claim "plausible." *Twombly*, 550 U.S. at 555, 570.

## II. Statute of Frauds

In support of their motion to dismiss, defendants contend that plaintiff's contract claims are barred by New York's Statute of Frauds, which provides that any "agreement, promise or undertaking" that "[b]y its terms is not to be performed within one year from the making thereof," as well as any "contract to pay compensation for services rendered in negotiating ... a business opportunity," "is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent ... ." N.Y. Gen. Ob. L. § 5-701(a)(1), (10). Defendants contend that the alleged contract here falls into both those categories, *i.e.*, that it could not be performed within a year and that it was an agreement to negotiate a business opportunity, and that it is void because it was not reduced to writing.

With respect to the one-year provision of subsection (a), "the law is clear that for a contract to fall within the Statute of Frauds, performance of the contract within one year must be virtually *impossible*." *Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F.Supp.2d 287, 300 (E.D.N.Y. 1998) (emphasis added), *aff'd*, 198 F.3d 233 (2d Cir. 1999). *See*, *e.g.*, *Ohanian v. Avis Rent A Car Sys.*, *Inc.*, 779 F.2d 101, 106 (2d Cir. 1985) ("The one-year provision has been held not to preclude an oral contract unless there is not ... the slightest possibility that it can be fully performed within one year"); *Stillman v. Kalikow*, 22 A.D.3d 660, 662 (2d Dep't 2005) ("The statute encompasses only those agreements which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year'") (quoting *D & N Boening v. Kirsch Beverages*, 63 N.Y.2d 449, 454 (1984)).

"Thus, it matters not whether it is 'unlikely or improbable' that the agreement can be performed within one year, because the 'critical test' is whether 'by its terms the agreement is not to be performed within a year.'" *Klagsbrun v. Rose*, No. 93 CIV. 7709, 1995 WL 43664, at *4 (S.D.N.Y. Feb. 3, 1995) (quoting *Festa v. Gilston*, 183 A.D.2d 525, 526 (1st Dep't 1992), and *Freedman v. Chemical Constr. Corp.*, 43 N.Y.2d 260, 265 (1977)).

The alleged contract here did not have any fixed duration, or termination date. Whether the contract is viewed as creating an employment relationship, a partnership, or a joint venture, it is therefore presumed to have been terminable at will. *See LoGerfo v. Trustees of Columbia University in City of New York*, 35 A.D.3d 395, 396 (2d Dep't 2006) ("whether it gave rise to an at-will employment relationship or to a relationship in the nature of a joint venture or partnership, [parties'] relationship was terminable at will by either party," since it "lacked a definite term of duration"); *Doynow v. Nynex Pub. Co.*, 202 A.D.2d 388, 388 (2d Dep't 1994) ("Absent an agreement establishing a fixed duration or a limitation by express agreement, employment by a private employer is presumed to be at will, and terminable by either party at any time") (citing *Sabetay v. Sterling Drug*, 69 N.Y.2d 329 (1987)).

A contract that is terminable at will is not subject to the Statute of Frauds. *See Gizara v. New York Times Co.*, 80 A.D.3d 1026, 1028 (3d Dep't 2011) ("The statute of frauds is not implicated in the case of oral agreements that are terminable at will because such agreements are capable of completion within one year") (citing *D & N Boening*, 63 N.Y.2d at 456). For that same reason, courts generally hold that "[t]he statute of frauds is inapplicable to an agreement to create a joint venture or partnership because an oral agreement for an indefinite period creates a partnership or joint venture at will." *Moses v. Savedoff*, 96 A.D.3d 466, 469 (1st Dep't 2012) (holding that "the parties' alleged agreement to share in the profits of certain cases, when reasonably interpreted, could have been performed within one year").

As stated, the parties' agreement had no specific end point–neither a particular date nor some identifiable task or goal to be accomplished. It was therefore terminable at will, and outside the Statute of Frauds. The fact that the parties' relationship actually lasted longer than a year does not alter that result. *See GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 777 (W.D.N.Y. 1991) ("The fact that an alleged oral contract in fact lasted more than one year does not mean that it violated the Statute of Frauds, so long as nothing in its terms barred performance within a year") (citing cases).

Although defendants' arguments concerning the Statute of Frauds appear unavailing, the issue presented by defendants' motion is not whether their Statute of Frauds defense is defective, as a matter of law, but whether plaintiff's claims are meritless, as a matter of law. As to that latter question, even if there were some doubt about the matter, I would at the least find that there are issues of fact that preclude dismissal. *See Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 371 (1998) (reversing dismissal of complaint where plaintiff alleged facts which, if true, supported the conclusion that each party's contractual performance would not have necessarily extended beyond a year); *see also Stillman v. Kalikow*, 22 A.D.3d 660, 662 (2d Dep't 2005) (fact question as to whether alleged agreement could be performed within one year precluded summary judgment based on statute of frauds).

For similar reasons, I also deny the motion to dismiss insofar as it is based on the statute's "business opportunity" provision, Gen. Ob. L. § 5-70(a)(10). For one thing, it is not clear at this point precisely what Haughton's duties were supposed to consist of, but they seem to have gone well beyond, if they even included, merely negotiating a business opportunity. The Business Plan indicated that Haughton would "provide[] support in the formulation of the underlying specific logic of the product from a clinical standpoint, in compliance with Federal Guidelines ... ." The plan did state that Haughton's "relationships [within the health care industry] will provide a significant number of potential customers for Cognisight, LLC," Dkt. #17-1 at 5, but even that statement does not explicitly state that he was to negotiate a particular business opportunity.

Likewise, Vasile's September 22, 2011 letter to Haughton, which recited the services that Haughton had rendered to Cognisight since 2007, stated that Haughton had been "[a]vailable as the Consulting Medical Director, for Cognisight," that he had "[h]elp[ed] develop and refine the business model," "[h]elp[ed] research, develop and refine the analytic software," "[h]elp[ed] incorporate new CMS guidelines into operation," and met with existing clients to discuss various issues. Dkt.#17-1 at 17-18. Vasile did state that Haughton had been "[i]nstrumental in Cognisight

landing [a particular] account," *id.* at 18, but it is not clear from the letter exactly what Haughton did in that regard.

It is far from clear, then, whether the parties, at the time they entered into the alleged contract, mutually envisioned that Haughton would be expected to negotiate any business opportunities for Cognisight. The bulk of his duties seem to have been related to other matters. *See Super v. Abdelazim*, 108 A.D.2d 1040, 1041-42 (3d Dep't 1985) ("The record contains allegations which, if believed by the trier of fact, demonstrate that plaintiff's role was more extensive than merely negotiating a business opportunity; rather, he was to render a wide variety of services, making his claim broad enough to survive the limitations of General Obligations Law § 5-701(a)(10)").

In addition, although "[a]s a general rule, if part of an entire contract is void under the statute of frauds, the whole contract is void," courts have also held that "where an oral agreement is a severable one, ... that part which, if standing alone, is not required to be in writing, may be enforced, provided such apportionment of the agreement may be accomplished without doing violence to its terms or making a new contract for the parties." *Apostolos v. R.D.T. Brokerage Corp.,* 159 A.D.2d 62, 65-66 (1st Dep't 1990); *accord Dickenson v. Dickenson Agency, Inc.*, 127 A.D.2d 983, 984 (4th Dep't 1987). Just as it remains to be seen exactly what Haughton's duties were expected to be, so it is not clear at this point whether any agreement regarding the negotiation of business opportunities might be severable from the other parts of the contract. *See Oxyn Telecomm's, Inc. v. Onse Telecom*, No. 01 Civ. 1012, 2003 WL 22271224, at *5 (S.D.N.Y. Sept. 30, 2003).

### III. Writing Requirement

Even if the Statute of Frauds does apply to the alleged contract here, I find that plaintiff has presented enough to show that the alleged contract was reduced to writing, to survive a motion to dismiss. The Business Plan and Vasile's September 22, 2011 letter to Haughton, taken together, could be found to constitute sufficient written evidence of a contract to satisfy the Statute of Frauds.

Several general principles bear upon this issue. First, the statute's requirement of a writing does not mean that the contract must be set forth in a single, formally written document. "The statute of frauds does not require the 'memorandum ... to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject-matter and occasion.'" *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 116 (2d Cir. 1985) (quoting *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54 (1953)). *Accord Wellnauer Trading Co. v. Annis*, 516 F.2d 878, 880 (2d Cir. 1975).

Second, the fact that one of the writings, Vasile's letter, was written around the time of, or even after, the termination of the parties' relationship, does not prevent it from constituting a writing for purposes of the Statute of Frauds. "[D]ocuments need not be in existence at the time the contract is made but may be supplied at a later date." *Weitnauer Trading Co. v. Annis*, 516 F.2d 878, 880 (2d Cir. 1975). *See, e.g., Merschrod v. Cornell Univ.*, 139 A.D.2d 802, 805 (3d Dep't 1988) (requirement of writing for university's alleged two-year contract to employ plaintiff could be satisfied by eight documents which, when explained and connected and combined with oral testimony, were legally sufficient to pose a factual question as to whether employment contract existed). The question is whether the writings sufficiently set forth the terms of the agreement.

Where two or more documents are alleged, together, to satisfy the writing requirement, they must "refer to the same subject matter, together contain all the material terms, and at least one of [them must be] signed or prepared by the party to be charged." *United Resource Recovery Corp. v. Ramko Venture Management, Inc.*, 584 F.Supp.2d 645, 654 (S.D.N.Y. 2008) (internal quote omitted). *Accord Direct Investment Partners AG v. Cerberus Global Investments, LLC*, No. 07 CIV. 3310, 2008 WL 355467, at *7 (S.D.N.Y. Feb. 7, 2008). Here, the Business Plan did set forth, in some detail, the services that plaintiff would be expected to provided to Cognisight, and it also indicated that he would be entitled to profit sharing in the amount of 8%. Dkt. #11-1 at 4.

Vasile's "Dear John" letter plainly related to the same subject matter as the Business Plan, insofar as Haughton's services are concerned. That letter was also signed by Vasile, and between

the two of them, they appear to lay out the material terms of the alleged contract, including plaintiff's general duties and his compensation. That is not to say that the documents are crystal clear as regards all those matters, but I find that plaintiff has sufficiently alleged at the pleading stage that there was a meeting of the minds as to the parties' respective obligations, and that those obligations were set forth in these writings. After all, there appears to be no doubt that plaintiff was paid in prior years at precisely the rate, 8%, mentioned in the Business Plan.

At the very least, this presents enough of a fact question to defeat a motion to dismiss. *See Strain v. Strain*, 228 A.D.2d 491, 491 (2d Dep't 1996) ("Whether these documents are sufficient to satisfy the Statute of Frauds and establish a binding agreement with respect to the sale of the company containing all of the essential terms on which there was agreement raises material triable issues of fact which preclude an award of summary judgment"); *Merschrod v. Cornell Univ.*, 139 A.D.2d 802, 805 (3d Dep't 1988) ("At trial plaintiff produced eight documents which, when explained, connected and combined with oral testimony, were legally sufficient to pose a factual question as to whether an employment contract existed"); *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 724 F.Supp. 110, 118 (S.D.N.Y. 1989) (factual issues existed as to whether writings satisfied Statute of Frauds).

**IV. Evidence of a Contract**

Defendants further contend that, aside from the Statute of Frauds, plaintiff has simply failed to plead a valid cause of action for breach of contract. To state a claim for breach of contract under New York law, the complaint must allege the existence of an agreement, plaintiff's performance of his obligations under the agreement, defendants' nonperformance, and resulting damages. *Harsco Corp. v. Segui*, 91 F.3d 3\37, 348 (2d Cir. 1996); *Elisa Dreier Reporting Corp. v. Global NAPS Networks, Inc.*, 84 AD3d 122, 127 (2d Dep't 2011).

Defendants assert that plaintiff's allegations are vague and conclusory, and that they fail to specify the exact terms of the contract that are alleged to have been breached. Again, though, the

allegations, and the relevant documents, do set forth the general terms of the agreement, and the respective obligations of the parties. At the pleading stage, more than that is not required. *See Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534, 2011 WL 5238658, at *6 (E.D.N.Y. Nov. 1, 2011) ("While the amended complaint is devoid of specifics, ... those specifics are not required in pleading a breach of contract action"); *S.E.C. v. Lee*, 720 F.Supp.2d 305, 331-32 (S.D.N.Y. 2010) (contract claim was separate and distinct from fraud claim, and was not subject to the heightened pleading standard of Rule 9(b)).

Furthermore, the parties did allegedly perform, for a time at least, according to the terms of the contract as alleged by plaintiff and as set out in the relevant documents. That includes defendants' payment to Haughton of 8% of Cognisight's net profits, at least for the years 2008 and 2009.

"The parties' course of conduct under a contract is persuasive evidence of their agreed intention." *Carol B. v. Sanford B.*, 54 A.D.3d 653, 654 (1st Dep't 2008). *See also Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.*, 41 N.Y.2d 397, 399 (1977) ("In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look ... to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds"); *Gulf Ins. Co. v. Transatlantic Reinsurance Co.*, 69 A.D.3d 71, 85 (1st Dep't 2009) ("How the parties perform a contract necessarily is manifested after execution of the contract, but their performance is highly probative of their state of mind at the time the contract was signed"); *Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 878 F.Supp.2d 411, 430 (E.D.N.Y. 2012) ("It is well settled that '[i]ntent can be gleaned from many sources, including ... the manner in which the provision has been applied in practice over time'") (quoting *Congregation Yetev Lev D'Satmar, Inc. v. Kahana*, 31 A.D.3d 541, 548-49 (2d Dep't 2006), *aff'd* 9 N.Y.3d 282 (2007)); *Rondout Valley Central School Dist. v. Coneco Corp.*, 339 F.Supp.2d 425, 436 (N.D.N.Y. 2004) (contractor's performance of maintenance services for several years constituted implicit admission that parties' contract required contractor to perform such services).

Given the Business Plan's reference to "eight percent to John Haughton," plaintiff's allegation that he was told by defendants that his payments for 2008 and 2009 represented 8% of Cognisight's net profits for those years does tend to show that the parties had agreed that he would be so compensated for his services.

Those allegations also support plaintiff's claim that defendants breached the contract by failing to pay him 8% of Cognisight's net profit for 2010. Vasile's offer of $25,000 lacked any explanation of where that figure came from. On the face of it, it seems to have been nothing more than a purely subjective valuation of the worth to Cognisight of Haughton's services in 2010. If a factfinder agrees with plaintiff that the parties did have a contract calling for payment at the 8% rate, then, defendants could be found to have breached that provision.

None of this means, of course, that plaintiff will ultimately prevail. The issue before the Court now is simply whether plaintiff has alleged enough facts to make out a facially valid claim for breach of contract. I conclude that he has clearly done so.

**V. Particular Contract Claims**

The Court's finding that plaintiff has sufficiently alleged that there was a contract between him and Cognisight, and that the contract is not barred by the Statute of Frauds, does not necessarily mean that each of his contract claims should survive. Each cause of action must still be assessed on its own merits.

To the extent that plaintiff alleges that defendants breached their contractual obligations to him by failing to pay him 8% of Cognisight's net profit during the period in which Haughton provided services for Cognisight, I conclude that he has stated valid contract claims. Plaintiff has clearly alleged that the parties had an agreement that he would be compensated at a certain rate, and that defendants failed to do so. Thus, the first and second causes of action can survive.

I also find that the third cause of action, which alleges that plaintiff is contractually entitled to 8% of Cognisight's net profits that accrued after the termination of the parties' relationship,

sufficiently alleges a claim at the pleading stage. Defendants contend that the complaint fails to allege facts supporting this claim, but the fact that the parties' contract may have been silent or ambiguous with respect to what profits would be included in the 8% calculation does not mean that no contract existed in that regard. Furthermore, to the extent that the alleged contract could be found to be ambiguous on this score, "ambiguous contract terms are interpreted against the drafter." *Nocella v. Fort Dearborn Life Ins. Co. of New York*, 99 A.D.3d 872, 876 (2d Cir. 2012) (citing *Guardian Life Ins. Co. of Am. v. Schaefer*, 70 N.Y.2d 888, 890 (1987)).

The eighth and ninth causes of action, alleging that plaintiff is entitled to 8% of the value of Cognisight as of the date of termination of the parties' relationship, or upon the sale of Cognisight, present a closer call. The complaint alleges that under the parties' agreement, plaintiff was to receive, in addition to his profit-sharing payments, "warrants that would be exercisable on the sale of [Cognisight] that would provide Dr. Haughton with 8% of the net value of the ... company upon its sale by GRIPA." Dkt. #1-2 at 4, ¶ 12.

Plaintiff has not identified, nor has the Court discovered, any mention in the Business Plan of such warrants, nor does plaintiff allege that he ever received such warrants in writing. The fact remains, however, that he has alleged that the parties agreed on this matter, and the Court cannot simply ignore that allegation. In addition, in a letter to "GRIPA leadership" dated June 6, 2011, however,[3] Haughton stated, "I am concerned that the company ... may have lost sight of its obligations to me. As you know, those obligations include not only the annual [8%] payment described above, but also the right to be paid 8% of the proceeds from the sale of [the] business if and when the same takes place." Dkt. #17-1 at 22.

That is some indication, then, that plaintiff, at least, believed that the parties' agreement encompassed such a provision. Certainly plaintiff's letter could also be seen as purely self-serving, and it is not conclusive proof of the matter, but such proof is not required at this point. In short,

---

[3] The letter is referenced in paragraph 36 of the complaint, *see* Dkt. 1-2 at 8, and thus may be considered on a motion to dismiss.

whether it was the parties' understanding that plaintiff would be entitled to 8% of the value of Cognisight upon its sale cannot be resolved on a motion to dismiss.

Admittedly, the allegations in support of some of these claims are thin, and they may well not survive a later motion for summary judgment, after a period of discovery. In deciding defendants' motion to dismiss, however, the Court's task is not to weigh the evidence, but to determine whether, "accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant," the plaintiff has stated a facially valid claim. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). *See also Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims") (internal quotations omitted). Though I have some doubt about the ultimate merits of these claims based on the alleged warrants, I will deny defendants' motion to dismiss them.

## VI. Quasi-Contractual and Noncontractual Claims

In addition to his contract claims, plaintiff has asserted claims for breach of fiduciary duty, unjust enrichment, an accounting, and for promissory estoppel. Defendants seek dismissal of all these claims, on various grounds.

Defendants contend that the claims for unjust enrichment and promissory estoppel should be dismissed on the ground that such claims cannot be used to avoid the Statute of Frauds. Since the Court has already ruled that the Statute of Frauds does not bar plaintiff's contract claims, that does not provide a basis for dismissal of these claims.[4]

---

[4]The existence of a valid contract also bars quasi-contractual claims. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded"). Defendants, who deny the existence of a valid contract with plaintiff, do not appear to rely on that ground, and in any event plaintiff may plead contract and noncontract claims in the alternative. *See*, *e.g.*, *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142, 149 (1st Cir. 1987)
(continued...)

Defendants also contend that the promissory estoppel claim must be dismissed because plaintiff has failed to allege a clear and unambiguous promise.[5] *See Kavitz v. IBM Corp.*, 458 Fed.Appx. 18, 20 (2d Cir. 2012). Plaintiff, however, has alleged that after the Business Plan was approved by GRIPA's Board of Directors, "GRIPA's President confirmed to Dr. Haughton his role as 'founder' and 'partner,' his 8% profits interest and his 8% interest in 'shared value built.'" Dkt. #1-2 at 4 ¶ 5. Even post-*Twombly*, plaintiff is not required to plead specific evidence at to this claim, and I find that plaintiff has adequately alleged a promise in this regard.

With respect to plaintiff's claim for breach of fiduciary duty, defendants argue that plaintiff has failed to allege facts to support his allegation of a fiduciary relationship between him and defendants, and that he has not alleged the manner in which that relationship was allegedly breached.

As stated, the Business Plan did use the terms "partner" and "partnership" when referring to Haughton and describing Cognisight's relationship with him. Dkt. #17-1 at 2-5. In general, "[t]he members of a partnership owe each other a duty of loyalty and good faith, and [a]s a fiduciary, a partner must consider his or her partners' welfare" in conducting the business of the partnership. *Gibbs v. Breed, Abbott & Morgan*, 271 A.D.2d 180, 184 (1st Dep't 2000); *see also Maillet v. Frontpoint Partners, L.L.C.*, No. 02 CIV. 7865, 2003 WL 21355218, at *4 (S.D.N.Y. June 10, 2003) ("It is well settled ... that a partner in an organization owes a fiduciary duty of loyalty to fellow partners in that organization"); *Zeising v. Kelly*, 152 F.Supp.2d 335, 347 (S.D.N.Y. 2001) ("coventurers, like co-partners, owe each other the finest loyalty and the utmost good faith throughout the course of the enterprise").

---

[4](...continued)
("appellants were certainly entitled to plead in the alternative, arguing a quantum meruit theory as well as an express contract theory").

[5]The complaint frames this cause of action as based on "the doctrines of promissory estoppel and/or detrimental reliance." Dkt. #1-2 at 10, ¶ 55. Detrimental reliance, however, is not a separate ground for recovery, but an element of a claim for promissory estoppel. *See, e.g.*, *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 339 (2d Cir. 2011); *Thome v. Alexander & Louisa Calder Foundation*, 70 A.D.3d 88, 105 (1st Dep't 2009), *leave to appeal denied*, 15 N.Y.3d 703 (2010).

Coughlin's use of such terminology is not necessarily determinative of the actual nature of plaintiff's status or relationship with respect to Cognisight, and Coughlin may well have used those words loosely. This is, nonetheless, some indication that a fiduciary relationship may have existed among the parties here.

In addition, the Court cannot rule as a matter of law at this juncture that plaintiff's allegations concerning defendants' failure or refusal to pay him 8% of Cognisight's net profits, in contravention of the parties' understanding and past practice, could not constitute a breach of fiduciary duty. Again, this claim may be subject to dismissal at some point, either on the merits or as duplicative of plaintiff's contract claims, but I am not prepared to dismiss it on a Rule 12(b)(6) motion.

As to plaintiff's claim for an accounting, to make out such a claim, plaintiff must allege (1) a fiduciary relationship with defendants (2) involving the entrustment of money or property, (3) that no other remedy exists, and (4) that plaintiff demanded and was refused an accounting. *In re Mary XX*, 33 A.D.3d 1066, 1068 (3d Dep't 2006); *see also Kastle v. Steibel*, 120 A.D.2d 868, 869 (3d Dep't 1986) ("In order to be entitled to an equitable accounting, plaintiff must prove a confidential relationship which induced him to entrust Steibel with money or property and that no adequate legal remedy exists").

Where parties have engaged in a joint venture, they generally have a right to an accounting upon dissolution of the venture. *See*, *e.g.*, *Scholastic, Inc. v. Harris*, 259 F.3d 73, 90 (2d Cir. 2001) ("Even if Scholastic already possesses detailed financial information regarding the joint venture, there is nevertheless still 'an absolute right to an accounting'") (quoting *Koppel v. Wien, Lane & Malkin*, 125 A.D.2d 230, 234 (1st Dep't 1986). In addition, an accounting may be warranted even absent dissolution "where a partner alleges a breach of fiduciary duty or a wrongful exclusion, when such is provided for by agreement, or where otherwise 'just and reasonable.'" *Id.* at 91 (quoting N.Y. Part. L. §§ 43, 44).

Plaintiff, however, seeks an accounting only for the 2007, 2008 and 2009 calendar years, and as to those years, he has not alleged any facts showing a basis for an accounting. There is no

indication that he ever doubted or had reason to doubt that he was in fact paid 8% of Cognisight's net profits for those years; indeed, it was defendants' unexpected failure to do so for 2010–contrary to their past practice–that prompted this lawsuit.  In addition, there is no allegation that plaintiff ever demanded an accounting for those prior years, nor is there any basis for finding that plaintiff lacks an adequate legal remedy.  If plaintiff was entitled to 8% of Cognisight's profits, as he claims, he may recover the amounts owed him through his other claims in this action.  This cause of action is therefore dismissed.

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #7) is granted in part and denied in part. The motion is granted as to plaintiff's sixth cause of action, for an accounting, and that claim is dismissed.  In all other respects, the motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 12, 2013.